**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRANDON MARTINEZ, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>INTEGRATED CAPITAL RECOVERY, LLC, DNF ASSOCIATES LLC, and DOES 1-25,<br>    Defendants. | **CASE NO. 20-CV-00582-AWI-SAB**<br><br>**ORDER GRANTING DEFENDANT DNF ASSOCIATES LLC'S MOTION TO DISMISS COMPLAINT**<br><br>(Doc. No. 6) |

## **INTRODUCTION**

Plaintiff Brandon Martinez brings this action individually and on behalf of others similarly situated alleging claims under the Fair Debt Collection Protection Act ("FDCPA") against Integrated Capital Recovery ("ICR") and DNF Associates LLC ("DNF" and, together with ICR, "Defendants") based on a debt collection notice stating that a service fee may be applied to payments made by credit card or debit card. Doc. No. 1. Now before the Court is DNF's motion to dismiss under for lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).[1] The Court has deemed the motion suitable for decision without oral argument, pursuant to Local Rule 230(g). For the reasons set forth below, the motion will granted.

---

[1] As used herein, "Rule" refers to the Federal Rules of Civil Procedure unless otherwise noted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Brandon Martinez is a resident of Merced County, California. Doc. No. 1 ¶ 7. ICR and DNF engage in the collection of debts originally incurred to third parties. Id. ¶¶ 8-11.

At some point prior to December 2, 2019, a debt was "allegedly" incurred to Build Card—Republic Bank, in connection with a transaction by Martinez of a "personal, family or household" nature. Doc. No. ¶¶ 25-26. Build Card-Republic Bank sold or assigned the debt to DNF who in turn contracted ICR to collect it. Id. ¶ 29.

On or about December 2, 2019, ICR mailed a letter to Martinez calling for several biweekly payments in the amount of $50.05, and a final payment of $56.77, to pay off a $757.47 sum. Doc. No. 1-2 at 2. The letter also states: "A service fee of $9.95 may be charged for payments if paying by Credit/Debit card depending on consumer's location and applicable contractual documents." Id. at 2. Martinez states that the $9.95 service fee "was not authorized by the agreement creating the debt or permitted by law" and Martinez "did not agree" to the charge. Doc. No. 1 ¶¶ 33-34.

Based on these allegations, Martinez brings two claims under the FDCPA against DNF and ICR, individually and on behalf of those similarly situated. First, Martinez alleges that the statement regarding the service fee constituted use of a false representation in collection of a debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10). Doc. No. 1 ¶¶ 38-42. Second, Martinez alleges that the statement regarding the service fee "unfairly advised" him that he owed more money than the amount of the debit and constituted an attempt to collect an amount not expressly authorized by the agreement creating the debt or permitted by law, in violation of 15 U.S.C. §§ 1692f and 16292f(1). Id. ¶¶ 43-47.

DNF now brings a motion to dismiss under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

## DNF'S MOTION

DNF argues that Martinez lacks the injury-in-fact required for standing because he fails to allege that he paid the service fee or that he made payment to ICR by credit card or debit card.

Doc. No. 6 at 6:16-24.[2] Further, DNF contends that Martinez's complaint is based entirely on ICR's December 2, 2019 letter and that Martinez has failed to allege that DNF itself engaged in conduct that violates the FDCPA or that DNF is vicariously liable for ICR's conduct. Id. at 17:16-24.

Martinez argues in opposition that he has suffered an "informational injury" in violation of the FDCPA and that courts have recognized "deception … in unlawfully attempting to collect a servicing fee" as an intangible injury sufficient to confer standing, even in the absence of the concrete harm of paying the fee. Doc. No. 6 at 9:24-10:6. More specifically, Martinez contends that the statement regarding the service fee put him "at risk of paying a fee which Defendants could not legally collect"; "at risk of foregoing the convenience of using [his] credit or debit card to pay by phone"; and at risk of failing to make payment "for lack of ready money." Id. at 20:16-21:9. Further, Martinez contends that the Third Circuit and Ninth Circuit have held that a debt buyer such as DNF can be held vicariously liable for the actions of an unaffiliated debt collector acting on its behalf. Id. at 21:12-22.

**LEGAL FRAMEWORK**

Rule 12(b)(1) provides for dismissal of a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) challenge may be either factual or facial. Edison v. United States, 822 F.3d 510, 517 (9th Cir. 2016); Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "A factual challenge 'rel[ies] on affidavits or any other evidence properly before the court' to contest the truth of the complaint's allegations." Courthouse News Serv. v. Planet, 750 F.3d 776, 780 (9th Cir. 2014) (quoting St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir.1989)). In a facial attack, by contrast, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Edison, 822 F.3d at 517 (quoting Safe Air, 373 F.3d at 1039). In resolving a facial attack, all factual allegations in a complaint are taken as true. See Lacano Invs., LLC v. Balash, 765 F.3d 1068, 1071 (9th Cir. 2014).

---

[2] All page citations to documents on the Court's electronic docket are to the page numbers in the CM/ECF stamp at the top of each filed page.

3

Standing doctrine, for its part, stems from Article III of the United States Constitution, which limits the subject matter jurisdiction of federal courts to "actual cases or controversies." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547, as revised (May 24, 2016) (citing Raines v. Byrd, 521 U.S. 811, 818 (1997)). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Id. (citations omitted). The " 'irreducible constitutional minimum' of standing consists of three elements." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  "The plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561; FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990) (citations omitted); see also, Spokeo, 136 S. Ct. at 1547 ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).

"To establish injury-in-fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent,' not 'conjectural or hypothetical.' " Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560). A plaintiff does not "automatically" satisfy the injury-in-fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. at 1549. Congress does, however, "ha[ve] the power to define injuries … that will give rise to a case or controversy where none existed before," Lujan, 504 U.S. at 580 (opinion concurring in part and concurring in judgment), and may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." Id. at 578. Thus, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." Spokeo, 136 S. Ct. at 1549 (citations omitted) (emphasis original).

//

//

//

4

**DISCUSSION**

For the reasons set forth below, the Court finds that Martinez lacks standing for his FDCPA claims.

**I.        Applicable Law**

   **A.        Standing for Claims Under the FDCPA**

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(a), (e); see also, Wade v. Regional Credit Ass'n, 87 F.3d 1098, 1099 (9th Cir. 1996) (discussing purpose of the FDCPA). Further, "Congress intended to achieve its goal of regulating debt collectors' conduct by motivating consumers to bring enforcement actions if they are the targets of unlawful collection efforts." Tourgeman v. Collins Fin. Servs., Inc., 755 F.3d 1109, 1118 (9th Cir. 2014), as amended on denial of reh'g and reh'g en banc (Oct. 31, 2014).

Since the Supreme Court's 2016 decision in *Spokeo Inc. v. Robins*, a majority of courts have found that Congress elevated violations of the FDCPA—including, specifically, violations of Sections 1692e and 1692f—to the status of legally cognizable injury sufficient to confer standing, with no additional showing of harm. See Pisarz v. GC Servs. Ltd. P'ship, 2017 WL 1102636, at *5 (D.N.J. Mar. 24, 2017) (collecting cases); Linehan v. AllianceOne Receivables Mgmt., 2016 WL 4765839, *7 (W.D. Wash. Sept. 13, 2016) (collecting cases); see also, Fuentes v. AR Res., Inc., 2017 WL 1197814, at *5 (D.N.J. Mar. 31, 2017) ("Accordingly, this Court joins the 'overwhelming majority of courts' that have determined that FDCPA violations under §§ 1692e and 1692f give rise to concrete, substantive injuries sufficient to establish Article III standing." (citations omitted)). In essence, courts have found that "[t]hrough the FDCPA, Congress created statutory legal rights to be free from certain abusive debt collection practices, [citation], and a debt collector's violation of those rights may constitute a concrete and particularized injury." Irvine v. I.C. Sys., Inc., 198 F. Supp. 3d 1232, 1237 (D. Colo. 2016); see Munoz v. California Bus. Bureau, Inc., 2016 WL 6517655, at *4 (E.D. Cal. Nov. 1, 2016) (finding that plaintiff had alleged "a

concrete and particularized injury in fact" because he "ha[d] statutorily-created rights to be free from a debt collector's inappropriate attempts to collect a debt that he is no longer responsible for; to be free from being contacted from a debt collector who knows he is represented; and to be free from being subjected to false, deceptive, unfair, or unconscionable means to collect a debt").

This Court agrees that a violation of the FDCPA can constitute a cognizable injury sufficient for standing. The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury. See 15 U.S.C. § 1692(a), (e). In deciding this motion, therefore, the Court must determine whether Martinez has alleged a violation of either Section 1692e or Section 1692f.

### B.   15 U.S.C. §§ 1692e and 1692f

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e(10), similarly, prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  Further, Section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

"Whether conduct violates §§ 1692e or 1692f requires an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.' " Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 934 (9th Cir. 2007); see also, Tourgeman v. Collins Fin. Servs., Inc., 755 F.3d 1109, 1117-18 (9th Cir. 2014), as amended on denial of reh'g and reh'g en banc (Oct. 31, 2014). "Whether language employed in connection the collection of a debt violates the FDCPA is a question of law for the Court to decide." Dupuy v. Weltman, Weinberg & Reis Co., 442 F. Supp. 2d 822, 824 (N.D. Cal. 2006) (quoting Van Westrienen v. Americontinental Collection Corp., 94 F. Supp. 2d 1087, 1099 (D. Or. 2000)) (internal quotation marks omitted).

"An FDCPA plaintiff need not even have actually been misled or deceived by the debt collector's representation; instead, liability depends on whether the hypothetical 'least sophisticated debtor' likely would be misled." Tourgeman, 755 F.3d at 1117-18. The FDCPA seeks to measure "the lawfulness of a debt collector's conduct not by its impact on the particular consumer who happens to bring a lawsuit, but rather on its likely effect on the most vulnerable consumers—the hypothetical 'least sophisticated debtor'—in the marketplace." Id. at 1118. "This objective standard 'ensur[es] that the FDCPA protects all consumers, the gullible as well as the shrewd ... the ignorant, the unthinking and the credulous.' " Costa v. Nat'l Action Fin. Servs., 634 F. Supp. 2d 1069, 1074 (E.D. Cal. 2007) (quoting Clomon v. Jackson, 988 F.2d 1314, 1318–19 (2d Cir. 1993)).

"At the same time, the standard 'preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care.' " Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1062 (9th Cir. 2011) (quoting Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008)) (some internal quotation marks omitted). "The FDCPA does not subject debt collectors to liability for 'bizarre,' 'idiosyncratic,' or 'peculiar' misinterpretations." Id. (citations omitted). Further, "[i]n assessing FDCPA liability, [courts] are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." Donohue, 592 F.3d at 1034; see also Tourgeman, 755 F.3d at 1119.

**II.     Analysis**

This action is based entirely on the following statement:

> A service fee of $9.95 may be charged for payments if paying by Credit/Debit card depending on a consumer's location and applicable contractual documents.

Doc. No. 1-2 at 2. The FDCPA, however, does not prohibit collection of amounts permitted by contract or applicable law. See 15 U.S.C. § 1692f(1) (prohibiting "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law"); see Tuttle v. Equifax Check, 190 F.3d 9, 13 (2d Cir. 1999). Moreover, "where parties have not

7

expressly agreed on charges to be collected with respect to a debt, state law determines whether additional charges are permitted." Riding v. Cach LLC, 992 F. Supp. 2d 987, 997–98 (C.D. Cal. 2014) (citing Palmer v. Stassinos, 348 F. Supp. 2d 1070, 1076 (N.D. Cal. 2004)). On its face, therefore, the statement at issue in this case does not describe conduct that is proscribed by the FDCPA. To the contrary, it essentially places the same conditions and limitations on the collection of service fees that the FDCPA places on debt collection in general. See 15 U.S.C. § 1692f(1).

Martinez points to several cases in which courts have found violations of the FDCPA in connection with statements regarding the collection of service fees. In those cases, however, service fees were categorically applied to all transactions of a certain type, and statements concerning the collection of service fees did not reflect the conditions or limitations set forth in Section 1692f(1). See, e.g., Fuentes, 2017 WL 1197814 at *1 ("A $5.00 convenience fee should be added to all transactions."); Thomas v. John A. Youderian Jr., LLC, 232 F. Supp. 3d 656, 662 (D.N.J. 2017) ("PLEASE NOTE: WE WILL ADD $3.00 TO ALL CREDIT CARD CHARGES FOR THIS CONVENIENCE."); Simmet v. Collection Consultants of California, 2016 WL 11002359, at *6 (C.D. Cal. July 7, 2016) ($4 service fee to be applied to all web-based payments). Based on the Court's research, the same is true of other cases finding FDCPA violations based on statements regarding service fees. See, e.g., Quinteros v. MBI Assocs., Inc., 999 F. Supp. 2d 434, 436 (E.D.N.Y. 2014) ("There will be a $5.00 processing fee for all credit cards or checks over the phone."); Campbell v. MBI Assocs., Inc., 98 F. Supp. 3d 568, 572 (E.D.N.Y. 2015) ("There will be a $5.00 processing fee for all credit cards."); Shami v. Nat'l Enter. Sys., 2010 WL 3824151, at *1 (E.D.N.Y. Sept. 23, 2010) ("Transaction fees will be charged if you use the automated phone system or the internet to make payment on this account."). In such cases, FDCPA violations are predicated on the notion that defendants made false statements in connection with collecting debts by representing that they were entitled to collect service fees that they were not, in fact, entitled to collect. See Quinteros, 999 F. Supp. 2d at 440 (finding that "[t]he 'least sophisticated consumer' would likely be deceived by the Processing Fee Statement into believing that Defendant was legally entitled to collect the five-dollar fee").

The Court finds the case at bar to be more analogous, however, to *Wade v. Regional Credit*

1  *Association*, 87 F.3d 1098 (9th Cir. 1996). In *Wade*, the plaintiff alleged claims under the FDCPA
2  based on a collection notice that read as follows:

4        WHY HAVEN'T WE HEARD FROM YOU? OUR RECORDS STILL SHOW
5        THIS AMOUNT OWING.

7        If not paid TODAY,
8        it may STOP YOU FROM OBTAINING credit TOMORROW.
9        PROTECT YOUR CREDIT REPUTATION.
10       SEND PAYMENT TODAY.
11       ...
12       DO NOT DISREGARD THIS NOTICE. YOUR CREDIT MAY BE
13       ADVERSELY AFFECTED. CONTACT US IMMEDIATELY.

15 Id. at 1099.

16       The district court dismissed the claims, and the Ninth Circuit affirmed, finding that the
17 notice did not violate Section 1692e, Section 1692e(10) or Section 1692f because the statement
18 that "failure to pay could adversely affect [plaintiff's] credit reputation" was accurate and did not
19 contain a "false representation" as to the defendant's power with respect to collecting payment. Id.
20 at 1100.  Further, the Ninth Circuit found that the "[t]he least sophisticated debtor would construe
21 the notice as a prudential reminder, not as a threat to take action" and that the notice was not unfair
22 or unconscionable "in either a legal or lay sense." Id.

23       The Court sees the statement at issue here in the same vein. The statement that "[a] service
24 fee of $9.95 may be charged … depending on a consumer's location and applicable contractual
25 documents" tracks rules for debt collection set forth in the FDCPA itself and, while it may have
26 been unlawful to collect a service fee from Martinez, given his credit card agreement or state of
27 residence, the Complaint contains no creditable allegations that the statement that ICR may collect
28 service fees in some cases is false. Further, the Court sees no reasonable basis to infer from the

statement that ICR would collect a service fee for credit card or debit card usage if it were unlawful to do so. In other words, the "least sophisticated debtor" would see this as accurate information useful in selecting a mode of payment, not a threat to impose unlawful fees or a false statement as to ICR's power with respect to debt collection. See Wade, 87 F.3d at 1100. Martinez has therefore not shown a violation of substantive rights under the FDCPA. See Munoz, 2016 WL 6517655 at *4 (finding that the FDCPA provides a substantive right "to be free from being subjected to false, deceptive, unfair, or unconscionable means to collect a debt").

This analysis also negates Martinez's contention that he has standing based on "the risk of forgoing the convenience" of payment by credit card or debit card and the "risk of giving up on paying [] for lack of ready money," Doc. No. 6 at 20:16-21:9, since the statement in question does not provide a basis for the "least sophisticated debtor"—or anyone else—to infer that an unlawful service fee would be applied. Thus, any risk of these alleged harms is not "fairly traceable" to Defendants' conduct. See Spokeo, 136 S. Ct. at 1546.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Martinez has failed to allege the injury-in-fact required for standing under Article III. Consequently, his class-action complaint must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). See Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976) ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (citation and internal quotation marks omitted)); Matte v. Sunshine Mobile Homes, Inc., 270 F. Supp. 2d 805, 826 (W.D. La. 2003). Further, since a jurisdictional defect deprives the Court of the power to consider the case, the complaint must be dismissed as to both Defendants, not just as to the moving party, DNF. See Evac, LLC v. Pataki, 89 F. Supp. 2d 250, 261 n.4 (N.D.N.Y. 2000); Ocean View Capital, Inc. v. Sumitomo Corp. of Am., 1999 WL 1201701, at *8 (S.D.N.Y. Dec. 15, 1999); see also, Kent v. Century Manor Tr. Ltd, 2019 WL 5596481, at *3 n.3 (E.D. Cal. Oct. 30, 2019), report and recommendation adopted, 2020 WL 704614 (E.D. Cal. Feb. 12, 2020). Finally,

since the jurisdictional defect cannot be remedied through amendment (the service fee statement says what it says), the Court finds that dismissal with prejudice is warranted. See <u>Kendall v. Visa U.S.A., Inc.</u>, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." (citation omitted)); <u>see also</u>, <u>Henry v. Jenkins</u>, 2020 WL 7714395, at *2 (N.D. Cal. Dec. 29, 2020) (dismissing for lack of jurisdiction with prejudice because "amendment would be futile").

In light of these findings, it is unnecessary for the Court to address arguments regarding dismissal under Rule 12(b)(6).

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant DNF Associates LLC's motion to dismiss (Doc. No. 6) is GRANTED;
2. The Complaint (Doc. No. 1) is DISMISSED WITH PREJUDICE; and
3. The Clerk is directed to CLOSE this case.

IT IS SO ORDERED.

Dated:   January 12, 2021

SENIOR DISTRICT JUDGE